HEATHER D. HEARNE, SBN 254496
hdh@kullmanlaw.com
**THE KULLMAN FIRM**
A Professional Law Corporation
4605 Bluebonnet Blvd., Suite A
Baton Rouge, LA 70809
Tel.: (225) 906-4243
Fax: (225) 906-4230

Attorneys for Defendant
GAINWELL TECHNOLOGIES, LLC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRENE RAMOS, individually and on behalf of others similarly situated, | CASE NO. |
| Plaintiff, | **DEFENDANT GAINWELL TECHNOLOGIES, LLC'S NOTICE OF REMOVAL** |
| vs. | |
| TDB COMMUNICATIONS, INC.; GAINWELL TECHNOLOGIES, LLC; DOES 1 through 20, | [Declarations of Heather Hearne, Jefferson Blandford, and Ramon Sarmiento filed concurrently herewith] |
| Defendants. | [Sacramento County Superior Court, Case No. 34-2021-00310107] |
| | Class Action |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF IRENE RAMOS AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Gainwell Technologies, LLC ("Gainwell") pursuant to 28 U.S.C. §§ 1441(a) and 1446 and asserting original

jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), hereby removes to the United States District Court for the Eastern District of California the above-captioned state court action, originally filed as Case No. 34-2021-00310107 in Sacramento County Superior Court, State of California. Removal is proper on the following grounds:

## TIMELINESS OF REMOVAL

1.    Plaintiff Irene Ramos ("Plaintiff" or "Ramos") filed her complaint against the defendants on October 21, 2021. Declaration of Heather D. Hearne ("Hearne Decl."), ¶ 4. The Complaint was served on Gainwell on November 24, 2021. Hearne Decl., ¶ 5, Exh. A (Complaint and Service of Summons). On December 6, 2021, Plaintiff filed a First Amended Complaint ("FAC"), which it served on Gainwell on December 15, 2021. *Id.*, ¶ 6, Exh. B (FAC). Gainwell filed an Answer to Plaintiff's FAC on January 25, 2022. *Id.*, ¶ 7, Exh. C (Gainwell Answer to FAC).

2.    Plaintiff's FAC is identical to her initial Complaint, save the addition of a claim for penalties pursuant to California's Private Attorneys' General Act ("PAGA"). The FAC alleges it is brought on behalf of "Plaintiff and similarly situated employees [who] worked for Defendants as non-exempt, hourly employees." FAC, ¶ 2. The FAC further alleges that Defendants acted "jointly and severally" with respect to all employees. *Id.*, ¶ 8. Based on the pleadings, Gainwell understood Plaintiff's class as limited to workers alleging they were jointly employed by defendant TDB Communications, Inc. ("TDB") and Gainwell.

3.    Based on this understanding of the pleadings as well as TDB's representations that the number of workers it provided to Gainwell during the statutory period was no more than 60, Gainwell did not seek to remove the action under CAFA upon receipt of the Complaint or FAC, as the population at issue does not satisfy the 100-person threshold.

4.    On February 11, 2022, Plaintiff served her first set of discovery requests on Gainwell. Hearne Decl., ¶ 8, Exh. D (Plaintiff's First Set of Special

DEFENDANT'S NOTICE OF REMOVAL

1    Interrogatories).  Those requests seek information as to "all persons who performed
2    work for [Gainwell] as a non-exempt employee in California at any time from
3    October 21, 2017 to the present." *Id.,* Interr. No. 1. Based on that written discovery,
4    Defendant now believes that Plaintiff's proposed class purports to include not only
5    individuals she claims are jointly employed by TDB and Gainwell, but also
6    Gainwell's direct employees.

7        5.    A notice of removal "shall be filed within 30 days after the receipt by
8    the defendant, through service or otherwise, of a copy of the initial pleading setting
9    forth the claim for relief upon which such action or proceeding is based…" 28
10   U.S.C. § 1446(b)(1). "The 30–day period for removal 'starts to run from
11   defendant's receipt of the initial pleading *only* when that pleading *affirmatively*
12   *reveals* on its face the facts necessary for federal court jurisdiction.'" *Avila v.*
13   *Rue21, Inc.,* 432 F. Supp. 3d 1175, 1181 (E.D. Cal. 2020) (*quoting Harris v.*
14   *Bankers Life & Cas. Co.*, 425 F.3d 689, 690-91 (9th Cir. 2005)) (emphasis added)
15   (internal quotation marks and citation omitted). "Whether the removability of the
16   FAC is affirmatively revealed on its face is limited to 'the four corners of the
17   applicable pleadings, not through subjective knowledge or a duty to make further
18   inquiry.'" *Avila,* 432 F. Supp. at 1181 (*quoting Harris,* 425 F.3d at 694).

19       6.    "'[I]f the case stated by the initial pleading is not removable, a notice
20   of removal may be filed within 30 days after receipt by the defendant, through
21   service or otherwise, of a copy of an amended pleading, motion, order or
22   other paper from which it may first be ascertained that the case is one which is or
23   has become removable.'" *Syria v. AllianceOne Receivables Mgmt., Inc.,* No. C17-
24   1139 TSZ, 2017 WL 8788045, at *1 (W.D. Wash. Dec. 14, 2017) (*quoting* 28
25   U.S.C. § 1446(b)(3)).

26       7.    Gainwell's notice of removal is timely pursuant to 28 U.S.C. § 1446(b)
27   because it is filed within 30 days after service of Plaintiff's first set of discovery
28   requests, which constitute the first written paper upon which Gainwell could

1    discern that the case is removable.

**SUMMARY OF PLAINTIFF'S ALLEGATIONS AND**

**FACTS GIVING RISE TO REMOVAL**

4        8.      Plaintiff's FAC alleges eight causes of action against Defendants:
(1) violation of California's Unfair Competition Law (Bus. & Prof. Code §17200,
*et seq.*); (2) failure to provide accurate wage statements; (3) failure to pay minimum
wages for all hours worked; (4) failure to provide meal and rest periods; (5) waiting
time penalties; (6) failure to pay overtime wages; (7) failure to reimburse business
expenses; and (8) civil penalties pursuant to the PAGA.

9        9.      As of the date of the filing of this Notice, Gainwell and TDB are the
only named defendants in this matter, and both defendants have been served.
Defendant TDB consents to this Removal.  *See* Hearne Decl., ¶ 9, Exh. E (consent
of TDB).

**SUMMARY OF FACTS GIVING RISE TO REMOVAL UNDER SECTION**

**1332(d)**

16       10.  Under the Class Action Fairness Act (CAFA), "[t]he district courts shall
have original jurisdiction of any civil action in which the matter in controversy
exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a
class action in which—(A) any member of a class of plaintiffs is a citizen of a State
different from any defendant."  28 U.S.C. § 1332(d)(2).  Additionally, "[i]n any
class action, the claims of the individual class members shall be aggregated to
determine whether the matter in controversy exceeds the sum or value of
$5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

24       11.      While Gainwell denies any liability in this case and believes class
treatment is completely inappropriate under the circumstances here, for purposes of
the jurisdictional requirements for removal only, Gainwell has a good faith basis to
believe that the **allegations** in Plaintiff's FAC, as clarified by her discovery
requests, put in controversy, in the aggregate, an amount that exceeds $5 million.

*See id.* Because at least one plaintiff is diverse from at least one defendant and a good faith reading of the FAC and subsequent discovery requests shows that the amount in controversy exceeds the sum of $5 million aggregated, federal jurisdiction is appropriate, and this action is properly removed pursuant to 28 U.S.C. § 1332(d). *See Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) ("no anti-removal presumption attends cases involving CAFA") (*quoting Dart Cherokee Basin Operating Co., LLC v Owens,* 136 S.Ct. 547 (2014)).

## A.    <u>Minimal Diversity Exists.</u>

12.    To meet CAFA's diversity requirement, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "Thus, under CAFA complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) (citations omitted).

13.    Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." A corporation's principal place of business is identified pursuant to the "nerve center" test, set forth in *Hertz Corp. v. Friend,* 130 S.Ct. 1181 (2010). Under the "nerve center" test, a company's principal place of business is in the state "where the corporation's high-level officers direct, control, and coordinate the corporation's activities"—typically the corporation's headquarters. *Id.* at 1186.

14.    Gainwell is a limited liability company. FAC, ¶ 2; *see also,* Declaration of Jefferson Blandford ("Blandford Decl."), ¶ 4. "[A]n LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006).

15.    Gainwell's sole member is Gainwell Acquisition Corp., which is incorporated in the State of Delaware and maintains its corporate headquarters in Conway, Arkansas. Blandford Decl., ¶¶ 4-5. Therefore, Gainwell is a citizen of

Delaware and Arkansas.

16.    For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983).  "A person is 'domiciled' in a location where he or she has established a fixed habitation or abode of a particular place, and [intends] to remain there permanently and/or indefinitely."  *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986) (citations and quotations omitted).  A party's residence is *prima facie* evidence of his domicile.  *Zavala v. Deutsche Bank Trust Co. Americas,* Case No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.C. Cal. July 10, 2013) (*citing State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)); *see also, Ervin v. Ballard Marine Construction, Inc.,* No. 16-cv-02931-WHO, 2015 WL 4239710 (N.D. Cal., Aug. 11, 2016).

17.    Plaintiff's FAC states that she resides in the State of California.  FAC, ¶ 4.  As such, she is a citizen of California.

18.    For the reasons set forth above, at least one plaintiff and one defendant are citizens of different states, and therefore minimal diversity is satisfied.

**B.    Plaintiff Alleges a Putative Class of More Than 100 Individuals**

19.    The putative class alleged in Plaintiff's FAC, as clarified by the subsequently served discovery requests, broadly encompasses individuals who "worked for Defendants as non-exempt, hourly employees."  FAC, ¶ 2.  Initial estimates of the contract workforce supplied by TDB to Gainwell during the class period place that figure somewhere between 30 and 60 putative class members.  Based on Gainwell's own records, Gainwell has determined that it directly employed 258 putative class members during the four years preceding the filing of Plaintiff's Complaint through March 8, 2022. Declaration of Ramon Sarmiento ("Sarmiento Decl."), ¶ 3.  Though Gainwell avers that Plaintiff's proposed class is overbroad, particularly insofar as Plaintiff was not directly employed by Gainwell and therefore was not subject to the policies and practices related to its direct

employee workforce and cannot adequately represent those employees, for purposes of removal only, Plaintiff's FAC, as clarified by subsequently served discovery requests, indisputably <u>alleges</u> a putative class of at least 100 persons.  28 U.S.C. § 1332(d)(5)(B).

## C.  <u>The Amount Placed in Controversy By The Complaint Exceeds $5 Million Aggregated.</u>

20.    Plaintiff seeks damages for, without limitation, unpaid wages, compensatory damages according to proof, liquidated damages, penalties pursuant to various Labor Code sections, reimbursement of alleged business expenses, restitution, pre- and post-judgment interest, and attorneys' fees.  In light of the FAC's ambiguity regarding the amount placed in controversy by the claims contained therein, the preponderance of the evidence standard applies to Gainwell's Notice of Removal.  *See, e.g., Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 701 (9th Cir. 2007).

21.    The preponderance standard is not a "daunting" standard.  *Muniz v. Pilot Travel Centers LLC,* No. 07-0325, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007).  Gainwell is not obligated to "research, state, and prove the plaintiff's claims for damages."  *Id.* (citation and quotation omitted); *see also, Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").  A removing defendant must simply produce underlying facts or evidence demonstrating "more likely than not" the amount in controversy exceeds the threshold amount. *Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 404 (9th Cir. 1996); *see also, Rippee v. Boston Market Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (noting that the inquiry is what amount is "put in controversy" by the plaintiff's complaint, not what a defendant will actually owe).

22.    Here, considering the FAC's allegations, types of damages sought, and similar cases, it is plain that the amount in controversy exceeds $5 million for the

1  reasons indicated below.

2        **i.**     **<u>Unprovided and/or Untimely Meal Periods and Rest Breaks</u>.**

3       23.    Plaintiff alleges that she and "similarly situated employees" were "not

4  allow[ed] … to take their statutorily required meal and rest periods."  FAC, ¶ 21

5  (*see also, id,* ¶ 22 ("Plaintiff and similarly situated employees *regularly missed*

6  their meal and rest periods and/or they were provided late due to the necessity of

7  remaining on phone calls with clients.") (emphasis added).

8       24.    Labor Code Section 226.7 provides that where an employer "fails to

9  provide an employee a meal period or rest period" in accordance with the law, the

10  employer "shall pay the employee one additional hour of pay at the employee's

11  regular rate of compensation for each work day that the meal period or rest period is

12  not provided."  Cal. Lab. Code § 226.7(b).

13       25.    Hourly rates for putative class members ranged from minimum wage

14  to $ 42.00/hour.  The average wage is more than $22/hour.  Sarmiento Decl., ¶ 4.

15       26.    Gainwell's records indicate that the roughly 258 putative class

16  members together worked 13,089 bi-weekly pay periods during the class period.

17  *Id.,* ¶ 5.  For the purpose of simplifying these calculations as well as to emphasize

18  the conservative values utilized, Gainwell relies on the following estimates for the

19  putative class members: 13,000 pay periods and an average hourly wage of $22.

20       27.    Given Plaintiff's assessment that she and other class members were

21  "regularly" deprived of complaint meal and rest periods, Gainwell assumes two

22  meal period violations and three rest period violations for each week (i.e., ten total

23  violations per bi-weekly pay period.)  Applying these conservative estimates to

24  Plaintiff's claim for unpaid meal and rest period premiums puts **at least $2,860,000**

25  **at issue**.[1]

26

27  ───────────────

28  [1] 13,000 pay periods *times* 10 (4 meal period violations and 6 rest period violations) *times* $22 *equals* $2,860,000.

### ii.    Unpaid Overtime (Cal. Labor Code §§ 510, 1194)

28.    Plaintiff alleges that she and similarly situated employees were required to "perform work off the clock," including, among other things, "boot[ing] up Defendants' computers, and two separate IT systems in order to complete their work." FAC, ¶ 28.

29.    All hours worked in excess of eight per day are required to be compensated at the employee's overtime rate. Cal. Lab. Code § 510(a).

30.    Assuming this unpaid boot up and/or log-in time resulted in no more than five minutes of unpaid work each workday and calculating the overtime rate based on the average hourly rate of $22, this claim puts an additional **$343,200** at issue.[2]

### iii.    Wage Statement Penalties (Cal. Labor Code § 226)

31.    Plaintiff alleges Gainwell failed to provide putative class members with complete and accurate wage statements because those statements did not show, *inter alia,* the correct gross wages and total hours worked as required under Labor Code Section 226. FAC, ¶ 24. Damages under Labor Code Section 226 provide for the greater of actual damages or $50 per initial violation per person and $100 per subsequent violation per person, with a maximum recovery of $4,000 per person. Cal. Labor Code § 226(e).

32.    Gainwell estimates that the approximately 258 putative class members were issued more than 7,642 paychecks during the one-year period prior to the filing of the Original Complaint. Sarmiento, ¶ 7. With $50 for each initial violation and $100 for each subsequent violation, this cause of action places **another $751,300 at issue** for the putative class *at minimum.*[3]

---

[2] Five minutes/day *times* 10 days per biweekly pay periods *equals* 50 minutes per pay period. 50 minutes (0.8, rounded down) *times* the OT rate of $33/hour ($22 *times* 1.5) *times* 13,000 pay periods *equals* $343,200.

[3] 258 initial violations at $50 each (subtotal $12,900) plus 7,384 subsequent violations at $100 each (subtotal $738,400) *equals* $751,300. Because there are fewer than 39 possible pay periods, none of the direct employee putative class members reach the $4,000 maximum recovery.

DEFENDANT'S NOTICE OF REMOVAL

1          iv.    **Waiting Time Penalties.**

2          33.    Plaintiff also seeks waiting time penalties based on Defendants'

3    alleged failure to pay her and putative class members all wages allegedly owed at

4    termination.  FAC, ¶¶ 29, 34.  The statute of limitations for penalties under Labor

5    Code Section 203 is three years where a claim for unpaid wages is also alleged.  *See*

6    *Pineda v. Bank of Am., N.A.,* 50 Cal. 4th 1389, 1399 (2010).  Penalties under

7    Section 203 are calculated at the employee's daily rate of pay at termination for a

8    maximum of 30 days.  Cal. Lab. Code § 203(a).

9          34.    Here putative class members regularly worked at least eight hours per

10   day (plus occasional overtime). Sarmiento Decl., ¶ 6.  During the three years prior

11   to the filing of Plaintiff's Complaint through March 8, 2022, at least 45 putative

12   class members ceased working for Gainwell, all more than 30 days prior to this

13   removal.  *Id.*, ¶ 8.  Assuming these individuals regularly worked only eight

14   hours/day (conservative in light of Plaintiff's allegations of unpaid overtime), and

15   further assuming that none of them were high-earners and instead relying on an

16   average regular rate of $22/hour, this translates to an average day rate of $176.[4]

17   With the maximum penalties for 45 employees at a day rate of $176, Plaintiff's

18   eighth cause of action places **at least $237,600 at issue.**[5]

19          v.    **Unreimbursed Expenses**

20          35.    In her seventh cause of action, Plaintiff alleges that she other putative

21   class members were "required to incur business-related expenses and were not

22   reimbursed" including for upgrading their home internet service and using an app

23   on their cell phones in order to track their time to be paid. FAC, ¶¶ 30-31; *id.*

24   ("Plaintiff and similarly situated employees frequently communicated with their

25   supervisors and managers, as well as other staff of Defendants, via their cell phone"

26

27   _____

[4] $22/hour *times* 8 hours *equals* average day rate of $176.

28   [5] $176 (day rate) *times* 30 days *times* 45 terminated class members *equals* $237,600.

DEFENDANT'S NOTICE OF REMOVAL

… and "were not reimbursed for the business use of their cell phones and home internet service.").

36.    Though Plaintiff's allegations could account for virtually 100% of an individual's internet and cell phone usage, Gainwell conservatively estimates that the work time at home constituted 50% of the putative class member's internet and cell usage.

37.    Pursuant to the CTIA-The Wireless Association, which is a trade organization composed of members of the wireless communication industry that collects wireless industry data, the average cost for cellphone services is $41.50 per month.[6]

38.    NerdWallet, a reputable company compiling comparative financial data on various financial products and services, found that the average costs for internet service range from approximately $47 to $69/month depending upon speed.[7]

39.    Conservatively assuming an average cell phone bill of $41/month and an average internet bill of $50/month, the monthly reimbursement cost at 50% is approximately $45.50.[8]

40.    $41.50 for the 6,200 months[9] is **$257,300**.

---

[6]  *See* https://www.ctia.org/the-wireless-industry/infographics-library?topic=28.  The Southern District of California court accepted CTIA's data for the average cost of cellphone service when approving a settlement under Labor Code Section 2802.  *Moreno v. Beacon Roofing Supply, Inc.,* No. 19CV185-GPC(LL), 2020 WL 3960481, at *4 (S.D. Cal. Jul. 13, 2020).  The CTIA's data was also accepted by the Central District of California in considering a removal and motion to remand in *Tehrani v. Macys West Stores, Inc.,* No. LA CV15-07286 JAK, 2016 WL 1559085, at *2 (C.D. Cal. Apr. 18, 2016).
[7]  *See* https://www.nerdwallet.com/article/finance/how-much-is-internet-per-month.    Similarly, Allconnect, a marketplace for comparing home services such as cable television and high-speed internet,  suggest  internet  packages  range  from  $60  to  $100  per  month.  *See* https://www.allconnect.com/blog/cost-of-high-speed-internet.
[8]  $41 *plus* $50 *divided by* 2 *equals* $45.50.
[9]  Defendant has divided the semi-monthly pay periods during the three-year limitations period (12,503) by two and then rounded down to the nearest hundred to conservatively estimate the number of months for which the putative class member would potentially seek reimbursement. Sarmiento Decl., ¶ 9.

DEFENDANT'S NOTICE OF REMOVAL

### vi.   Sub Total

41.   Even based on the most conservative of estimates, taking into account only Gainwell's direct employees for which it has data and excluding the 30-60 contract workers assigned by TDB, the amount placed in controversy by Plaintiff's statutory claims alone exceeds $4.3 million:

| Category of Damages | Amount in Controversy |
|---|---|
| Meal & Rest Period Premiums | $2,860,000 |
| Unpaid Overtime | $343,200 |
| Wage Statement Penalties | $751,300 |
| Waiting Time Penalties | $237,600 |
| Business Expense Reimbursement | $257,300 |
| **TOTAL** | **$4,449,400** |

### vii.   Contract Workers Provided by TDB

42.   TDB's initial estimates indicate between 30 and 60 additional putative class members performed work for Gainwell on a contract basis.  Hearne Decl., ¶ 10.  Assuming, for purposes of highlighting the conservative nature of these estimates, only 30 contract worker putative class members (a figure that constitutes only 11.6% of the 258 direct employee group), and further assuming a proportional potential recovery by this group of 11.6% of the $4,449,400 placed at issue by the claims alleged on behalf of direct employee putative class members, the claims of this contract worker group put an additional $516,130 at issue[10] and bring the total amount in controversy to $4,965,530.[11]

---

[10] 11.6% of $4,449,400 is $516,130.
[11] $516,130 *plus* $4,449,400 *equals* $4,965,530.

1

2        **viii.  Attorneys' Fees**

3        43.    "[W]hen a statute or contract provides for the recovery

4   of attorneys' fees, prospective attorneys' fees must be included in the assessment of

5   the amount in controversy." *Arias v. Residence Inn By Marriott,* 936 F.3d 920, 922

6   (9th Cir. 2019) (*citing Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794

7   (9th Cir. 2018)); *see also, id.* ("[A] court must include future attorneys' fees

8   recoverable by statute or contract when assessing whether the amount-in-

9   controversy requirement is met.").   "A defendant does 'not need to prove to a legal

10  certainty' that a plaintiff will be awarded the proffered attorneys' fees in

11  the removal notice." *Greene v. Harley-Davidson, Inc.,* 965 F.3d 767, 774 n. 4  (9th

12  Cir. 2020) (*citing Dart Cherokee  Basin Operating Co., LLC v. Owens,* 574 U.S.

13  81, 88 (2014)). The estimated attorneys' fees must simply be reasonable. *Anderson*

14  *v. Starbucks Corp.,* No. 3:20-CV-01178-JD, 2020 WL 7779015, at *4 (N.D. Cal.

15  Dec. 31, 2020)

16       44.    Here, Plaintiff's claims provide for the recovery of attorneys' fees.

17  *See, e.g.,* Cal. Lab. Code § 2802(c) (the "necessary expenditures or losses" an

18  employer is liable for includes "attorney's fees incurred by the employee enforcing

19  the rights granted by this section"); *Anderson,* 2020 WL 7779015, at *4.

20       45.    Courts in this circuit have "treated a potential 25% fee award as

21  reasonable in similar cases." *Id.* at *4 (*citing Lucas v. Kors*, Case No. CV 18-1608-

22  MWF, 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (and cases cited

23  therein)).

24       46.    Twenty-five percent of $4,449,400, the amount placed at issue by the

25  direct employee statutory claims only, is $1,112,350.  Adding this to the $4,449,400

26  placed in controversy by Plaintiff's statutory claims alone and as to only a portion

27  of the class, yields a total amount of **$5,561,750.**[12]

28  _____

[12] Even if fees of only 15% are recovered, the amount in controversy would still exceed $5

47.    Twenty-five percent of $4,965,530, the amount placed at issue by both the direct employee and contract worker statutory claims, is $1,241,382.  Adding this to the $4,965,530 placed in controversy by the claims of those two groups, yields a total amount of **$6,206,912.**

48.    Moreover, even if the 25% recovery for attorneys' fees is deemed too speculative, it is important to note that the amount in controversy exceeds $5 million even if Plaintiff's attorneys are only awarded 3% of the total recovery.[13]

49.    Therefore, the amount in controversy exceeds $5 million and meets the jurisdictional threshold for removal under 28 U.S.C. § 1332(d).

50.    For these reasons, and the diversity of Defendants and Plaintiff, removal is appropriate under 28 U.S.C. § 1332(d).

## THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

51.    Accordingly, this action is properly removable under 28 U.S.C. §§ 1441(a) and 1446.

52.    Additionally, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2):

        (a)    the amount in controversy exceeds $5 million dollars exclusive of interest and costs;

        (b)    is a class action; and

        (c)    any member of the class of plaintiffs is a citizen of a state different from any defendant.

53.    In addition, the United States District Court for the Eastern District of California is the federal judicial district embracing the Superior Court for the County of Sacramento, where the suit was originally filed.  28 U.S.C. § 84(b).  *See also,* 28 U.S.C. § 1441(a).

54.    True and correct copies of the Summons and Complaint, Proofs of

---

million.  $4,449,400 *times* 15% *equals* $667,410.  $4,449,400 *plus* $667,410 *equals* $5,116,810.
[13] 3% of $4,965,530 *equals* $148,965.  $148,965 *plus* $4,965,530 *equals* $5,114,495.

1  Service, and Defendants' Answer, are filed concurrently herewith as Exhibits A–C

2  and F to the Hearne Declaration.  This constitutes the complete record of all records

3  and proceedings in the state court and are appended hereto as required by 28 U.S.C.

4  § 1446(a).

5       55.  Upon filing the Notice of Removal, Gainwell will furnish written

6  notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the

7  Clerk of the Sacramento County Superior Court, pursuant to 28 U.S.C. § 1446(d).

8       Wherefore, Gainwell hereby removes this action from the Superior Court of

9  California in and for the County of Sacramento.

Dated: March 14, 2022

By:  */s/ Heather D. Hearne*
    Heather D. Hearne
    hdh@kullmanlaw.com

**THE KULLMAN FIRM**
A Professional Law Corporation

Attorneys for Defendant
GAINWELL TECHNOLOGIES, LLC

<u>**PROOF OF SERVICE**</u>

**STATE OF LOUISIANA**

**PARISH OF EAST BATON ROUGE**

     I am employed in City of Baton Rouge, Louisiana.  I am over the age of 18 and not a party to this action.  My business address is 4605 Bluebonnet Blvd., Suite A, Baton Rouge, LA   70809.

     On **March 14, 2022,** I caused the foregoing document(s) described as:

**Defendant Gainwell Technologies, LLC's Notice of Removal, Declarations of Heather Hearne (including Exhibits A-F), Jefferson Blandford,  and Ramon Sarmiento, and Civil Cover Sheet.**

to be served on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

     *TIMOTHY B. DEL CASTILLO*
     *tdc@castleemploymentlaw.com*
     *KENT L. BRADBURY*
     *kb@castleemploymentlaw.com*
     *Castle Law:   California Employment Counsel*
     *2999 Douglas Blvd., Suite 180*
     *Roseville, CA   95661*
     *ATTORNEYS FOR PLAINTIFF IRENE RAMOS*

     *ANGELA M. CLEMENTS*
     *angela@clementsemploymentlaw.com*
     *CLEMENTS EMPLOYMENT LAW*
     *75 Broadway, Suite 200*
     *San Francisco, CA  94111*
     *ATTORNEY FOR DEFENDANT TDB COMMUNICATIONS, INC.*

 **_X_**  <u>**VIA OVERYNIGHT DELIVERY - FEDEX**</u>

     I deposited such document(s) in a box or other facility regularly maintained by FedEx or delivered such document(s) to a courier or driver authorized by FedEx, with fees paid or provided for, and addressed to the person(s) being served.

DEFENDANT'S NOTICE OF REMOVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct.  Executed on March 14, 2022.

*/s/ Cathy O. Edmonds*
CATHY O. EDMONDS